**CASE NO. 25-3700**

# United States Court of Appeals
## for the
## Sixth Circuit

**JANOS ROPER**

*Plaintiff-Appellant*

v.

**CITY OF CINCINNATI FIRE DEPARTMENT**

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Civil Action No. 1:22-cv-00652
Honorable Matthew W. McFarland, United States District Judge, presiding

**BRIEF OF APPELLANT**

/s/ Joshua Adam Engel
Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
 (513) 445-9600
 (513) 492-8989 (Fax)
engel@engelandmartin.com

**CORPORATE DISCLOSURE**

Appellant is not a subsidiary or affiliate of a publicly owned corporation.   There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE.................................................................................ii

STATEMENT THAT ORAL ARGUMENT IS UNNECESSARY..............................1

JURISDICTIONAL STATEMENT .......................................................................2

STATEMENT OF ISSUES ..................................................................................3

STATEMENT OF THE CASE.............................................................................4

    A.  Facts ..........................................................................................................4

    B.  Procedural History.....................................................................................9

SUMMARY OF ARGUMENT..............................................................................10

ARGUMENT ......................................................................................................11

    A.  Standards Of Review..................................................................................11

    B.  The District Court Improperly Granted The Motion For Summary
        Judgment ...................................................................................................12

        1.  The Framework ...................................................................................12

        2.  Roper Stated A Sufficient Claim For Race Discrimination .....................13

CONCLUSION ...................................................................................................17

CERTIFICATE OF COMPLIANCE.......................................................................18

CERTIFICATE OF SERVICE...............................................................................18

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS...............19

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................11

*Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382 (6th Cir. 1993) .........................11

*Brown v. FCA US LLC*, 6th Cir. No. 25-1405, 2025 U.S. App. LEXIS 33120 (Dec. 17, 2025) ..................................................................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................11

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) ...................... 14, 15

*Gaffney v. Potter,* 345 F.App'x 991 (6th Cir. 2009) ...................................................16

*Gamble v. JP Morgan Chase & Co.*, 689 F. App'x 397 (6th Cir. 2017) ..............................13

*Jackson v. Fedex Corporate Servs.*, 518 F.3d 388 (6th Cir. 2008) ...................................15

*Johnson v. Metro. Govt. of Nashville & Davidson Cty.*, 502 F.App'x 523 (6th Cir. 2012) .....................................................................................................16

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) ...........................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........................11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .............................................12

*Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716 (6th Cir. 2011) ..................................................................................................11

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763 (6th Cir. 2018) ....................................12

*Russell v. Ohio, Dept. of Administrative Services*, 302 F. App'x 386 (6th Cir. 2008) .............12

*Shivers v. Charter Communications, Inc.*, 6th Cir. No. 22-3574, 2023 U.S. App. LEXIS 11109 (May 4, 2023) ...........................................................................16

*Smith v. City of Toledo*, 13 F.4th 508 (6th Cir. 2021) ............................................. 14, 16

*White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232 (6th Cir. 2005) ...............................12

*Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011) .................................................12

*Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365 (6th Cir. 2017) ..........................11

## STATUTES

28 U.S.C. § 1292 ................................................................................................................2

28 U.S.C. § 1331 ................................................................................................................2

28 U.S.C. § 1343 ................................................................................................................2

28 U.S.C. §1441................................................................................................................2

42 U.S.C. § 2000e................................................................................................................2

**STATEMENT THAT ORAL ARGUMENT IS UNNECESSARY**

Appellant respectfully suggests that oral argument in this matter is appropriate but may not be necessary.  Appellant defers to the Court on whether oral argument will assist the Court in its analysis of the disputed issues presented on appeal.

**JURISDICTIONAL STATEMENT**

This action is a civil action of which the District Court had original jurisdiction under 28 U.S.C. §§ 1331 and 1343, and is one which was properly removed to the District Court by Defendant-Appellee pursuant to the provisions of 28 U.S.C. §1441(a) in that it arises, in part, under the laws of the United States, specifically Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

This is an appeal from a final judgment of a District Court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

Whether the District Court properly granted summary judgment in favor of an employer on a racial discrimination claim where the employee provided sufficient proof that similarly situated, nonprotected individuals were treated more favorably.

## STATEMENT OF THE CASE

### A.    Facts

Janos Roper is a firefighter with Defendant City of Cincinnati's Fire Department. (Complaint, R.3, PageID#23; Roper Depo., R.39, PageID#644.)    Roper began his employment with the City of Cincinnati in 2000.   He was promoted to Lieutenant in 2015 and to Captain in 2018.  At the time of this lawsuit, he continued to hold the rank of Captain.  Roper identifies as African American. (Roper Depo., R.39, PageID#712; Employee Summary Report, R.39-1, PageID#826.)

In August 2019, Roper sat for the District Chief promotional exam. The exam had several components and was given in different locations.  (Roper Depo., R.39, PageID#671.)  At one location, Plaintiff several other individuals were given assigned seats for the exam, but others were not. He explained, "Several candidates were given assigned seats when we got there.  Some were allowed to randomly sit where they wanted." (Roper Depo., R.39, PageID#673-74.) During the written portion, Roper and several other candidates experienced technical difficulties with the computer software. Specifically, the cursor would jump randomly, disrupting the formatting of answers. Roper testified:

> Well, during the testing process, as we were -- well, first we were given clear instructions at the beginning that our paper had to be certain margins, certain fonts, certain spacing.· And that's what we were told we had to do.· And so we all had to do that.

4

And when we got to the computer, throughout that process, clicking upon each document, trying to type answers, it would skip around.

(Roper Depo., R.39, PageID#676.)  Roper explained the impact of these problems on his performance:

Well, it's kind of hard to specify as far as timing, but I know, psychologically, it was a lot, doing, like, over two, three years of preparation for this exam.

And so to keep clicking on a document and it skips from two to seven or from seven to two, or three to four, and it's jumping around, it's not only just the time itself, but the psychological time to regroup, to get back to where one was thinking and trying to formulate a response to each scenario.

I believe there was over seven scenarios, which were very specific in nature.  And we had to handle them per our procedures --procedures book.· And policies are all, in HR, are over like 500 pages each book.

So for us to have to respond to these difficult scenarios, but then lose time, is very, very damaging.

(Roper Depo., R.39, PageID#677.)

Of the six total individuals who experienced issues with their exam, five of them were African American, including Plaintiff, and one was white. Roper reported this immediately to the proctor, Erica Burks.  He testified at his deposition:

I raised my hand and asked Ms. Burks... she came over to me and I showed her what -- I verbally said, this is what's happening. I demonstrated it to Ms. Burks. And then Ms. Burks, herself, typed on the computer and saw how it jumped, acknowledged it was jumping, and saying, okay, we'll handle it, but did not handle it. Just told us to ignore the rules after we spent three or four hours paying attention to the rules.

5

(Roper Depo., R.39, PageID#750-751.)  Burks confirmed via email at the time that multiple candidates were affected.  (Email, R.39-4, PageID#848.)  Burks wrote: There were 6 candidates who encountered the issue…

> I opened the template and noticed that if several returns were inputted into the document, or if information entered beyond the one-page, the Item Number Header would shift down, causing the cursor to shift/jump and changed the header…

(*Id.*)  Only one of the examinees who experienced these issues, Captain Byrd, was later promoted to District Chief. (Roper Depo., Doc. 39, PageID#676.)

The City's third-party testing vendor, IOS, Inc., investigated the issue and determined that no candidate would be penalized for formatting errors caused by the software. Consequently, the assessors were instructed to ignore formatting when grading.  An email concluded:

> Though we try to ensure technical issues do not occur during a computer administration and try to fix them when they do, reliance on technology can always result in challenges.
>
> HR reported the issues to IOS before any of the written in-basket exercises were evaluated. IOS reviewed the issue and determined the best course of action would be not to penalize any candidates for formatting errors during the grading process. Assessors were explicitly instructed to ignore any formatting concerns within the document…

(Correspondence, R.41-5, PageID#1243.)

Roper explained that Burks "Just told us to ignore the rules after we spent three or four hours paying attention to the rules."  (Roper Depo., R.39, PageID#789.)  He felt the disruption caused him to lose valuable time and focus compared to others who

6

might not have had the issue immediately.  He wrote an email to Burks asking that the problems be taken into account in grading his exam.  He wrote:

> At first, I thought it was just the computer I was using that was having problems or "operator error" until I heard the announcement at the end of the exam concerning the "jumping pages error" situation. I wanted to complete the exam as best that I could with the limited time frame provided. Also, I wanted to avoid any interruptions as I did not know if those experiencing computer problems would be granted more time.
>
> By the "computer screen" jumping several pages, I lost valuable time trying to adjust my screen instead of being able to type and edit my work.

(Email, R.41-1, PageID#1236-1237.)

Following the exam, an eligibility list was created based on the candidates' scores. Roper ranked sixteenth on the list. (Roper Depo., R.39, PageID#702; Promotion List, R.39-7, PageID#851.)  The City promoted the top eleven candidates based on the number of vacancies available during the life of the list, two of whom were minority candidates.    (Roper Depo., R.39, PageID#702-703; Admissions, R. 39-11, PageID#888.)   Roper was not reached for promotion.

In November 2019, Roper filed a Charge of Discrimination with both the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission, alleging that he was subjected to different terms and conditions of employment during the promotional exam process based on his race. (OCRC Charge, R.39-5; PageID#849; EEOC Dismissal; R.39-6, PageID#850.)  In April 2020, Roper filed a complaint of race discrimination after receiving his performance review from District Chief Vollmer, who

7

originally gave him failing marks in the "attitude/initiative" category but then changed the score to passing. (Letter, R. 39-12, PageID#893.)

After these complaints Vollmer issued reprimands to Roper for tasks which Plaintiff claims were unfair and outside of Defendant's policies. (Notice of Official Reprimand, R.39-18; PageID#1103.  Plaintiff filed another claim with the EEOC and OCRC, this time claiming race and disability discrimination, along with retaliation, in February 2022. (OCRC Charge, R.39-24; PageID#1117; EEOC Dismissal, R.39-25, PageID#1120.)

In April 2020, Vollmer issued Roper a performance review with a score of 80. Roper contended this score was retaliatory and baseless, specifically regarding a dispute over driving safety protocols.  (Roper Depo., R.39, PageID#783.)  In May 2021, Roper received a written reprimand for failing to complete mandatory HIPAA training by the deadline. (Roper Depo., R.39, PageID#797.)   On the same day as the HIPAA reprimand, Roper received a second reprimand for "Dishonesty" or "Failure of Good Behavior" after refusing to sign a document, or signing it with an "X," during a meeting with Chief Vollmer.  He testified that Vollmer "was forcing me, belligerent to me, saying that you better sign it that way I want to, not according to human resources policy and procedure."  (Roper Depo, R.39, PageID#799.)

This litigation followed.

8

**B.    Procedural History**

Roper filed his Complaint on November 10, 2022, alleging race and disability discrimination and retaliation in violation of Title VII, the ADA, and Ohio state law. (Complaint, R.3.)    The District Court dismissed Roper's claims for hostile work environment, whistleblower violations, and public policy violations, but allowed the failure to promote (race and disability) and retaliation claims to proceed to discovery. (Order, R.20.)

Following discovery, the City moved for summary judgment. The District Court granted summary judgment in favor of the City on all remaining claims. (Order, R.53.)

This appeal followed.  (Notice of Appeal, R.56.)

**SUMMARY OF ARGUMENT**

Roper is in a protected class for his race and was qualified for the promotional position. The District Court incorrectly concluded that Plaintiff failed to show that any similarly situated, nonprotected individuals were treated more favorably. The District Court's focus on differential scores rather than the uniformity of the examination framework failed adequately to take into account that the exam process itself was flawed. While Roper was able to complete the exam, he experienced difficulty with the issues which impacted his performance. The District Court incorrectly discounted this evidence, noting that assessors were instructed to ignore formatting concerns, and claiming that none of the candidates would be penalized for such errors. This, however, failed to take into account the impact of the problems with the exam process on Roper's overall performance.

Roper presented evidence that non-African-American candidates who completed the examination and received higher scores had more favorable testing conditions. This is enough to create an issue of fact that may be presented to a jury.

10

**ARGUMENT**

**A.     Standards Of Review**

This Court reviews a district court's summary judgment rulings *de novo*. *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of establishing that there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). A court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).

**B.     The District Court Improperly Granted The Motion For Summary Judgment**

**1.     The Framework**

This Court most commonly analyzes discrimination and retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To make out a *prima facie* case of discrimination based on a failure to promote, Roper must show that (1) he is a member of the protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) other employees of similar qualifications who  were not members of the protected class received promotions at the time his request for promotion was denied.  See *Russell v. Ohio, Dept. of Administrative Services*, 302 F. App'x 386, 392 (6th Cir. 2008); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).  To establish a *prima facie* retaliation claim, Roper must show that: (1) he engaged in protected activity; (2) defendant knew about the protected activity; (3) defendant took a "materially adverse" employment-related action against him; and (4) a causal connection between the protected activity and the adverse action exists. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018), *citing Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

Under this test, assuming that Plaintiff can establish a *prima facie* case of employment discrimination or retaliation, the burden shifts to the defendant to

12

articulate a non-discriminatory explanation for the employment action. *Gamble v. JP Morgan Chase & Co.*, 689 F. App'x 397, 401 (6th Cir. 2017). If the defendant does so, the burden shifts back to the plaintiff to show the defendant's explanation is pretextual. *Id.*

### 2.    Roper Stated A Sufficient Claim for Race Discrimination

Summary judgment was not appropriate because this is a case that on its facts could go either way. A jury's verdict in a properly tried case would likely be sustained regardless of whether the verdict was in favor of Roper or in favor of the City. But that is precisely the reason summary judgement should have been denied. The conflicting proof and the inferences that can be drawn from the record in this case raise genuine issues of material fact that preclude the grant of summary judgment.

There is no dispute that Roper is in a protected class for his race and that he was qualified for the promotional position. There is also no dispute that Roper was on the eligibility list for the position but was ultimately not promoted. Thus, Roper met the first three elements of a *prima facie* case on his failure to promote claim. (Id.)

The District Court, in granting summary judgment on the racial discrimination claim, primarily concluded that Roper failed to show that any similarly situated, nonprotected individuals were treated more favorably. To be similarly situated, individuals need not be perfectly correlated, but must be similar in "relevant aspects," such as working for the same supervisor, being subjected to the same standards, or engaging in the same conduct without differentiating circumstances to warrant different

treatment. *Smith v. City of Toledo*, 13 F.4th 508, 515 (6th Cir. 2021); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The District Court relied on the observation that all candidates who sat for the August 2019 District Chief promotional exam were subject to the same formal standards and engaged in the same conduct. The District Court, thus, reached a conclusion that the potential similarly situated individuals were others who took the test, but received promotion. The District Court concluded that because these individuals "all scored higher than [Roper] did on the test" they were not similarly situated. The district court's focus on differential scores rather than the uniformity of the examination framework was inconsistent with the standard *Jackson* directs. The problem with the District Courts' analysis is that it failed adequately to take into account that the exam process itself was flawed. While Roper was able to complete the exam, he experienced difficulties which impacted his performance. The District Court discounted this evidence, noting that "[a]ssessors were explicitly instructed to ignore formatting concerns," and that none of the candidates would be penalized for such errors. This approach, however, failed to take into account the impact of the problems with the exam process on Roper's overall performance. He testified that he "had to stop testing to get up twice to get assistance from human resources, which took a total of eight to ten minutes, lost time in the exam, and experienced undue duress." (Roper Depo., R.39, PagedID#690.) He further testified:

14

> But, see, that disrupted our test, because [we] were told at the beginning to follow certain rules, and then at the end we were told that didn't matter.
>
> But following the rules cost us time, because we were told, explicitly, margins, spaces, the font size, and things like that.
>
> So it disrupted our flow during the test to follow the rules then tell us not to follow them at the end of the process.

(Pl. Depo., R.39, PageID#679.  See also Roper Depo., R.39, PageID#677 (describing the impact of problems as "very, very damaging").)

This Court, in *Ercegovich* rejected such a rigid approach and held that the inquiry must assess whether potential comparators are similar in "all relevant respects." However, this Court has emphasized that to be considered similarly-situated, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment."  154 F.3d at 352.  This Court requires a plaintiff to demonstrate only that the plaintiff and the other employee are similar in the necessary, relevant respects, noting that requiring anything more than this "would undermine the remedial purpose of the anti-discrimination statutes." 154 F.3d at 353.  This Court subsequently noted:

> We determined that the appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects. We further disapproved of a rigid standard of similarly situated…

*Jackson v. Fedex Corporate Servs.*, 518 F.3d 388, 394 (6th Cir. 2008) (citation omitted).  *See also Brown v. FCA US LLC*, 6th Cir. No. 25-1405, 2025 U.S. App. LEXIS 33120, at *11 (Dec. 17, 2025) (plaintiff noted "that 'comparator evidence is not a rigid…

15

requirement,'" and she's right"); *Shivers v. Charter Communications, Inc.*, 6th Cir. No. 22-3574, 2023 U.S. App. LEXIS 11109, at \*22 (May 4, 2023) ("The comparison need not be an 'exact correlation'").

The flaw in the District's Court's approach is a failure to recognize that the "relevant aspects" formulation is inherently context-sensitive: what is relevant to the comparison depends entirely on the nature of the discrimination being alleged. Where a plaintiff's theory is that the evaluation process itself was skewed, the output of that process cannot serve as a "relevant aspect" against which to measure similarity, because accepting it as such would foreclose the claim at the threshold without engaging the merits. In other words, the District Court's approach suffers from a fundamental logical flaw: it used the ranking generated by the exam to show that candidates were not similarly situated, while simultaneously treating that ranking as a legitimate, non-discriminatory reason for the promotion decisions. *Cf. Smith,* 13 F.4th at 516 ("An employer cannot claim to dismiss employees according to a neutral criterion, like passing a test, if it actually gives different and harder tests to some employees because of their race.").[1]

---

[1] The cases relied upon by the Defendant below and the District Court are inapposite. In *Johnson v. Metro. Govt. of Nashville & Davidson Cty.*, 502 F.App'x 523, 538 (6th Cir. 2012), the test scores were not dispositive but a chief "held the sole discretion to choose among candidates" for promotion. In *Gaffney v. Potter,* 345 F.App'x 991, 993 (6th Cir. 2009), the only allegedly similarly situated employee was "one probationary employee [who] lasted a few weeks longer than another." The District Court's emphasis on the fact that some African American individuals were promoted is similarly unavailing. The failure of Roper and other African-American candidates who had defective testing

**CONCLUSION**

The Judgment of the District Court should be reversed and this matter remanded

for further proceedings.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

---

procedures could not be considered a proper reason for the lack of promotion because
their test was different than the test given to the other candidates.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 6 Cir R. 32(a) I hereby certify that this document complies with the type-volume limitation. This document contains 3111 words, excluding the portions listed in 6 Cir. R. 32(b), as calculated by Microsoft Word.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

18

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Description | Date Entered | PageID# Range |
|---|---|---|---|
| | | | |
| 1 | MOTICE OF REMOVAL | 11/10/22 | 1 - 2 |
| 3 | COMPLAINT | 11/10/22 | 20-35 |
| 14 | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS | 7/11/23 | 523-534 |
| 22 | ANSWER TO COMPLAINT | 7/23/23 | 537-551 |
| 39 | DEPOSITION OF JANOS ROPER AND EXHIBITS | 9/11/2024 | 638-1125 |
| 41 | DEPOSITION OF ERICA BURKS AND EXHIBITS | 9/11/2024 | 1128-1260 |
| 43 | DEPOSITION OF STEVEN BREITFELDER AND EXHIBITS | 9/11/2024 | 1263-1346 |
| 47 | DEPOSITION OF JASON VOLLMER AND EXHIBITS | 9/11/2024 | 1354-1454 |
| 53 | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT | 11/5/2024 | 1662-1677 |

19

| Record Entry Number | Description | Date Entered | PageID# Range |
|---|---|---|---|
| | | | |
| 54 | JUDGMENT | 7/31/25 | 1678 |
| 56 | NOTICE OF APPEAL | 8/29/25 | 1684 |

20